# Exhibit A

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

**NOTICE TO DEFENDANT:** A LA CARTE PRODUCTIONS, LLC, a California limited
**(AVISO AL DEMANDADO):** liability company, RLJ ENTERTAINMENT, INC.,
a Nevada corporation, AMC NETWORK ENTERTAINMENT, LLC, a New York limited liability
company, and AMC NETWORKS INC., a Delaware corporation, and DOES 1 to 100, inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:** JANE DOE
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

<table>
<tr><td><i>FOR COURT USE ONLY<br>(SOLO PARA USO DE LA CORTE)</i></td></tr>
<tr><td><b>Electronically FILED by<br>Superior Court of California,<br>County of Los Angeles<br>10/18/2024 11:35 AM<br>David W. Slayton,<br>Executive Officer/Clerk of Court,<br>By S. Ruiz, Deputy Clerk</b></td></tr>
</table>

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
Superior Court of California, County of Los Angeles
111 North Hill Street
Los Angeles, California 90012

**CASE NUMBER:**
*(Número del Caso):*
24STCV27316

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

SANSANOWICZ LAW GROUP, P.C. c/o Leonard H. Sansanowicz
21031 Ventura Boulevard, Suite 701, Woodland Hills, CA 91364, tel: (818) 639-8510

DATE:          10/18/2024          Clerk, by   David W. Slayton, Executive Officer/Clerk of Court   Deputy
*(Fecha)*                          *(Secretario)* _____ S. Ruiz _____ *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* **AMC NETWORK ENTERTAINMENT, LLC, a New York limited liability compan**

   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
          ☒ other *(specify):* LLC
4. ☐ by personal delivery on *(date):*

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>*www.courtinfo.ca.gov*<br>Westlaw Doc & Form Builder• |



1   Leonard H. Sansanowicz, Esq. (SBN 255729)
2   SANSANOWICZ LAW GROUP, P.C.
    21031 Ventura Boulevard, Suite 701
3   Woodland Hills, CA 91364
    Tel: (818) 639-8510
4   Fax: (818) 639-8511
    leonard@law-slg.com
5
    Attorneys for PLAINTIFF JANE DOE
6

**Electronically FILED by
Superior Court of California,
County of Los Angeles
10/18/2024 11:35 AM
David W. Slayton,
Executive Officer/Clerk of Court,
By S. Ruiz, Deputy Clerk**

7

8              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9          **FOR THE COUNTY OF LOS ANGELES – CENTRAL DISTRICT**

10

11  JANE DOE,                             Case No.:    24STCV27316

12                        Plaintiff,      *UNDERLINED JURISDICTION*

13          vs.                           **PLAINTIFF'S COMPLAINT FOR DAMAGES
                                          AND DEMAND FOR JURY TRIAL FOR:**
14
    A LA CARTE PRODUCTIONS, LLC, a        1.  **SEXUAL HARASSMENT, IN VIOLATION
15  California limited liability company, RLJ     OF GOV'T CODE § 12940(j);**
    ENTERTAINMENT, INC., a Nevada         2.  **GENDER DISCRIMINATION, IN
16  corporation, AMC NETWORK                  VIOLATION OF GOV'T CODE § 12940(a);**
    ENTERTAINMENT, LLC, a New York        3.  **FEHA RETALIATION, IN VIOLATION OF
17  limited liability company, and AMC        GOV'T CODE § 12940(k);**
    NETWORKS INC., a Delaware corporation, 4. **FAILURE TO PREVENT
18  and DOES 1 to 100, inclusive,             DISCRIMINATION OR HARASSMENT, IN
                                              VIOLATION OF GOV'T CODE § 12940(h);**
19                        Defendants.      5.  **WHISTLEBLOWER RETALIATION, IN
                                              VIOLATION OF LABOR CODE § 1102.5(b);**
20                                         6.  **PROMISSORY FRAUD, IN VIOLATION
                                              OF CIVIL CODE §§ 1572, 1709, 1710;**
21                                         7.  **BREACH OF CONTRACT; AND**
                                           8.  **CONSTRUCTIVE DISCHARGE IN
22                                            VIOLATION OF PUBLIC POLICY.**

23

24

25

26

27

28

                                   - 1 -
                    COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

SANSANOWICZ LAW GROUP, P.C.
Attorneys at Law

SANSANOWICZ LAW GROUP, P.C.
Attorneys at Law

COMES NOW Plaintiff Jane Doe[1] ("Plaintiff"), for causes of action against Defendants A La Carte Productions, LLC, RLJ Entertainment, Inc., AMC Network Entertainment LLC, AMC Networks, Inc., and DOES 1 to 100, inclusive (collectively, "Defendants"), alleging as follows:

## NATURE OF THE ACTION

1.     This is a complaint brought under the California Government Code, as well as related common law principles, for sexual harassment, gender discrimination, failure to prevent harassment and discrimination, retaliation (both under the FEHA and for blowing the whistle), promissory fraud, breach of contract, and constructive discharge. Plaintiff seeks damages, interest, declaratory relief, attorney's fees and costs from Defendants.

## PARTIES

2.     Plaintiff Jane Doe ("Plaintiff") is, and at all times relevant was, an individual residing in Los Angeles County, California. From November 2, 2021, through her constructive discharge on or about October 20, 2022, Plaintiff was employed by Defendants as a television actor for the television series, "*A La Carte*," which streamed on the ALLBLK streaming service, owned by RLJ Entertainment, Inc. and AMC Networks, Inc.

3.     Defendant A La Carte Productions, LLC ("ALC Productions") is and at all times relevant was a California limited liability company that employed Plaintiff and others in California, located at 4804 Laurel Canyon Blvd., # 1260, Valley Village, CA 91607. At all relevant times herein, A La Carte Productions employed more than five individuals at said location.

4.     Defendant RLJ Entertainment, Inc. ("RLJ") is and at all times relevant was a Delaware limited liability corporation that employed Plaintiff and others in California, with corporate offices at 8515 Georgia Avenue, Suite 650, Silver Spring, MD 20910, and a principal place of business in California located at 6320 Canoga Avenue, 8th Floor, Woodland Hills, CA

---

[1] Because of the nature of the allegations herein, Plaintiff is identified by a pseudonym to preserve her confidentiality and to avoid any potential vilification or harm, pursuant to applicable law, including *Starbucks Corp. v. Superior Ct.* (2008) 168 Cal. App. 4th 1436. Retaliation against victims of sexual harassment, especially in the entertainment industry, is well-documented. *See* https://www.hollywoodreporter.com/lifestyle/lifestyle-news/anita-hill-hollywood-commission-second-report-1235785386/.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1  91367, and later at 2425 Olympic Boulevard, Suite 400E, Santa Monica, CA 90404.

2      5.    Defendant AMC Network Entertainment, LLC ("AMC Entertainment") is and at all

3  times relevant was a New York limited liability corporation that employed Plaintiff and others in

4  California, with corporate offices at 11 Penn Plaza, New York, NY 10001, and a principal place of

5  business in California located at 2425 Olympic Boulevard, Suite 400E, Santa Monica, CA 90404.

6      6.    Defendant AMC Networks, Inc. ("AMC Networks") is and at all times relevant was

7  a Delaware corporation that employed Plaintiff and others in California, with a principal place of

8  business located at 11 Penn Plaza, New York, NY 10001.

9      7.    Plaintiff currently is unaware of the true names of the Defendants sued herein as

10  Does 1 through 100, inclusive. Plaintiff sues said Defendants by said fictitious names and will

11  amend this complaint when the true names and capacities are ascertained or when such facts

12  pertaining to liability are ascertained, or as permitted by law or by the Court. Plaintiff is informed

13  and believes, and thereon alleges, that each of the fictitiously named Defendants is in some manner

14  responsible for the events and allegations set forth in this complaint. Plaintiff is informed and

15  believes, and thereon alleges, that Does 1 through 100 are the partners, joint employers, agents,

16  owners, shareholders, directors, members, officers, managers or employees of ALC Productions,

17  RLJ, AMC Entertainment, and/or AMC Networks. Plaintiff is informed and believes, and thereon

18  alleges, that at all relevant times, each defendant was an employer, principal, agent, manager,

19  partner, joint venturer, officer, director, controlling shareholder, subsidiary, affiliate, parent

20  corporation, successor in interest and/or predecessor in interest of some or all of the other

21  Defendants, and was engaged with some or all of the other Defendants in a joint enterprise for

22  profit, and bore such other relationships to some or all of the other Defendants so as to be liable for

23  their conduct with respect to the matters alleged in this complaint. Plaintiff is informed and

24  believes, and thereon alleges, that each defendant acted pursuant to and within the scope of the

25  relationships alleged above, and that at all relevant times, each defendant did, knew or should have

26  known about, authorized, ratified, adopted, approved, controlled, or aided and abetted the conduct

27  of all other Defendants, which proximately caused the damages herein alleged. Plaintiff is informed

28  and believes, and thereon alleges, that each of said Defendants is in some manner intentionally,

SANSANOWICZ LAW GROUP, P.C.
Attorneys at Law

- 2 -
COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1    negligently, willfully or otherwise responsible for the acts, omissions, occurrences, and transactions

2    alleged herein.

3         8.      Plaintiff is informed and believes, and thereon alleges, that each and all of the acts

4    and omissions alleged herein was performed by, or is attributable to, ALC Productions, RLJ, AMC

5    Entertainment, AMC Networks and/or Does 1 through 100, each acting as the agent, employee,

6    alter ego, and/or joint venturer of, or working in concert with, each of the other co-Defendants and

7    was acting within the course and scope of such agency, employment, joint venture, or concerted

8    activity with legal authority to act on the others' behalf. The acts of any and all Defendants were in

9    accordance with, and represent, the official policy and practice of ALC Productions.

10        9.      ALC Productions, RLJ, AMC Entertainment, AMC Networks and the business

11    entities sued as Does 1 through 100 were and are Plaintiff's employers. Under California law,

12    Defendants are jointly and severally liable as employers, or other persons acting on behalf of

13    Defendants, for violating, or causing to be violated, the violations alleged herein because they have

14    each exercised sufficient control over the terms, wages, hours, working conditions, and employment

15    of Plaintiff. Each Defendant had the power to hire and fire Plaintiff and other employees, supervise

16    and control their work schedule and/or conditions of employment, determine their rate of pay and/or

17    control how, or if, Plaintiff and other employees were paid for time worked. Defendants suffered or

18    permitted Plaintiff to work and/or engaged Plaintiff and others to create a common law employment

19    relationship. As joint employers of Plaintiff, Defendants are jointly and severally liable for the

20    penalties and all other relief available to Plaintiff as alleged herein.

21                         **JURISDICTION AND VENUE**

22        10.     Jurisdiction for this matter lies properly with this Court because the monetary

23    damages and penalties sought by Plaintiff exceed the minimal jurisdiction limits of the Superior

24    Court and will be established according to proof at trial. This Court also has jurisdiction over this

25    action pursuant to the California Constitution, Article VI, § 10.

26        11.     This Court also has jurisdiction in this matter because during her employment,

27    Plaintiff was a California citizen, as was Defendant ALC Productions. Further, there is no federal

28    question at issue, as the issues herein are based solely on California statutes and law.

SANSANOWICZ LAW GROUP, P.C.
Attorneys at Law

12.    Venue is proper in this Court because Defendants employ persons, including Plaintiff, in this county, and thus a substantial portion of the transactions and occurrences related to this action occurred in this county. (CCP § 395.) Moreover, the principal violations of California law occurred in California, and the conduct of Defendants which form the basis for Plaintiff's claims occurred within or arose out of California and within this county.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

13.    Plaintiff has exhausted her administrative remedies by timely filing a charge with the California Civil Rights Department and thereafter received a "right to sue" notification.

**FACTUAL BACKGROUND**

**A. Plaintiff Agreed to Perform in a Television Drama Which Included Simulated Sex Scenes, But Only If Strict Conditions Were Met to Ensure Her Safety.**

14.    On October 1, 2021, Plaintiff received an invitation to audition for a role in Dijon Talton's directorial debut, entitled *A La Carte*. According to the audition notes, *A La Carte* was to be a "a scripted, dramedy series about the Black millennial dating experience and one girl's… 'liberal' approach to sex and dating." The series was to air on ALLBLK, a subscription entertainment service operated by AMC Networks and dedicated to streaming content featuring Black talent.

15.    Before production began, Plaintiff understood that the show's scripts called for simulated sex scenes. But Plaintiff also knew, as an experienced performer, that acting was not the same thing as doing: murder mysteries do not involve actual murder; space odysseys do not require actual space travel; bank heist movies do not involve actual robberies, shootouts, or car chases. Accordingly, Plaintiff expected that any role on *A La Carte* would only simulate sex, nothing more.

16.    Moreover, Plaintiff understood that the production company either had or intended to sign a contract with the Screen Actors Guild/American Federation of Television and Radio Artists ("SAG-AFTRA"), the world's preeminent labor union representing film and television actors. The operative SAG-AFTRA contract included strict protections vis-à-vis simulating sex on screen.

17.    With these assurances, Plaintiff auditioned for a role in *A La Carte*, and Defendants indicated their interest in casting her. On October 28, 2021, Plaintiff joined Talton and other

- 4 -

prospective cast members for a series of eight "chemistry reads," where each actor's compatibility was tested against one another. The reads were a success. On October 29, 2021, Defendants extended an offer to Plaintiff for a lead role.

18.    On or about October 30, 2021, Plaintiff and her acting manager spoke with Talton to review filming safety protocols. Talton made several promises to Plaintiff, including that: (1) each actor would undergo physical examinations to prevent the transmission of venereal disease; (2) all SAG-AFTRA safety protocols would be followed, including having closed sets (meaning that only the essential crew would be present) during filming of simulated sex scenes; (3) Talton would hire an intimacy coordinator to review choreography and maintain safety during all such scenes; (4) any changes to the script that required nudity would be conveyed in writing and would be subject to Plaintiff's consent at least 48 hours prior to filming (consistent with SAG-AFTRA guidelines); (5) Talton would "re-work" scenes in the script that directed Plaintiff to engage in, and be subjected to, physical groping of the genitals; and (6) Plaintiff would not be filmed wearing anything less than what was covered by a standard bikini (meaning, larger than a thong).

19.    In addition, Plaintiff's talent agents negotiated on her behalf that she was to be dressed in either non-see-through lingerie or non-see-through bra and underwear when shooting simulated sex scenes, and that she would not be filmed in any way that would show full frontal or rear nudity.

20.    On November 3, 2021, Plaintiff met with the cast and crew for table reads, costume fitting, and hair and make-up consultations. She met her scene partner for the simulated sex scenes.

21.    Meanwhile, both Plaintiff's and ALC Productions' attorneys began hashing out the finer details of Plaintiff's employment. On November 3, 2021, ALC Productions' attorney emailed Plaintiff's representatives "the agreement for [Plaintiff's] employment in the series A La Carte." In the months to follow, this document, hereafter referred to as the "Talent Agreement," would undergo various edits and revisions. However, the key provisions regarding nudity, simulated sex scenes, and compensation remained virtually untouched from the November 3 original version.

22.    Specifically, the Talent Agreement always specified that the "Producer shall provide closed sets during any filming of [simulated sex] scenes and shall provide an intimacy coordinator

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

SANSANOWICZ LAW GROUP, P.C.
Attorneys at Law

SANSANOWICZ LAW GROUP, P.C.
Attorneys at Law

1    to provide further clarity on the details of the scene(s), walk Actor through its choreography, and

2    address any questions about onset safety." These provisions memorialized the promises Talton had

3    made to Plaintiff when she asked about on-set safety.

4        23.    On November 6, 2021, Plaintiff filmed a successful first day for *A La Carte*. "It feels

5    good," she told her manager, "I'm excited to kick some butt and knock out a good shoot!!"

6    **B.  Defendants Repeatedly Directed Plaintiff to Perform in Sexual Scenarios Which**

7    **Exceeded Both Contractual and Consensual Bounds.**

8        24.    Plaintiff woke up the next day, November 7, 2021, to a troubling call from Talton:

9    Plaintiff's partner for the simulated sex scenes had been replaced overnight with an actor whom she

10   had never met. In a few short hours, Plaintiff was slated to kiss and simulate sexual acts with this

11   new performer. The replacement was so last-minute that her previous partner's name remained on

12   the day's call sheet.

13       25.    Later that day, Talton introduced the on-set intimacy coordinator for the first time,

14   who was a woman. In addition to supervising and choreographing simulated sex scenes, ensuring

15   closed sets, and remaining on hand to robe actors after filming, the intimacy coordinator was also

16   designated to serve as the set medic.

17       26.    Aside from the intimacy coordinator, the essential crew that remained during closed

18   set filming included four camera operators, two sound operators, the first Assistant Director, and

19   Talton – all men.

20       27.    Immediately after meeting the intimacy coordinator, Plaintiff filmed her first

21   simulated sex scene for *A La Carte*. She was scripted to "have sex" on a bar with her new scene

22   partner. The intimacy coordinator did not run through any choreography prior to the filming of this

23   scene, nor did she ensure that Plaintiff's new scene partner had undergone a physical examination to

24   prevent against the transmission of venereal disease. She also did not ensure the set was closed.

25       28.    Plaintiff complained to her manager that the intimacy coordinator had failed to do

26   the above acts to maintain Plaintiff's safety. A few days later, on or about November 10, 2021,

27   Plaintiff's manager reiterated the terms of Plaintiff's safety requirements to the intimacy

28   coordinator, who agreed to make sure to close the sets in the future.

SANSANOWICZ LAW GROUP, P.C
Attorneys at Law

29.     Later in the day on November 10, 2021 – after Plaintiff's complaint had been communicated to the intimacy coordinator – Plaintiff filmed two more simulated sex scenes. The first scene's script directed Plaintiff to "lie naked, soaked and sated" in a bed. Per the oral and written agreements, Plaintiff requested underwear to cover her body during filming. The crew handed her a thong, which exposed her buttocks to the camera, and which violated both Plaintiff's oral and written agreements regarding nudity, as well as SAG-AFTRA's guidelines. Plaintiff asked for a robe to cover herself before and after shooting. The crew declined. Conscious of her exposed lower body, Plaintiff asked Talton if the cameras would be directed above her waist. Talton assured Plaintiff that the cameras would only film her upper body. Talton lied; Plaintiff's buttocks were filmed and are clearly visible in the final version of this scene. Again, the set was not closed.

30.     Later in the day on November 10, 2021, Plaintiff was directed to act out a "shower sex" scene. Plaintiff's scene partner was completely nude except for a prosthetic covering his genitals. Plaintiff was once again given a lace thong, and this time she was given "pasties," which covered only a minimal portion of her breasts to conceal her nipples. The intimacy coordinator was on hand during the scene to deliver Plaintiff her clothes before and after filming. However, the intimacy coordinator did not close the set. In fact, Plaintiff could see several people whom she had never witnessed standing around Talton's monitor, watching her simulate sex in a shower. When she noticed these onlookers, Plaintiff was caught off guard, confused and visibly uncomfortable.

31.     On or about November 11, 2021, Talton pulled Plaintiff to the side. He told Plaintiff people were complaining that she was acting like a "diva." This had the effect of making Plaintiff feel remorse for asserting her safety needs. She even apologized to a crew member for any trouble she may have caused.

32.     Plaintiff's fourth simulated sex scene was filmed on November 16, 2024. The script directed Plaintiff to "remove[] her panties" and "throw them" at her scene partner. Plaintiff asked Talton how many cameras were rolling. He replied that just one camera was active; only the front end of her body would be filmed. Again, this was not true; a second camera filmed Plaintiff's buttocks without her knowledge or consent. As Plaintiff continued to shoot the scene, she became increasingly nervous, anxious, and uncomfortable; the intimacy coordinator remained far away, and

Plaintiff saw she was surrounded by a crew consisting of only men.

33.    Plaintiff's fifth simulated sex scene, also filmed on November 16, 2024, was unscripted and unexpected. Talton was eager to reshoot a prior simulated sex scene and wanted to take advantage of the last five minutes in the day. He pulled Plaintiff from her trailer and began re-writing the scene on the spot, changing the dialogue and the choreography. Talton then scrapped the studio location and led both Plaintiff and her scene partner to a public bathroom that was actively being used by cast and crew. The intimacy coordinator was not present at the new location, and, upon information and belief, she was never asked to be present for the filming of this scene. Talton filmed Plaintiff simulating sex in this bathroom and then released her for the night.

34.    Upon returning to her trailer, Plaintiff suffered a panic attack.

35.    On November 24, 2021, Plaintiff filmed a scene in which she was scripted to trip and fall onto her scene partner. The scene was not identified as sexual in nature. However, Talton told Plaintiff immediately before filming this scene that she was supposed to grab her scene partner's penis as she caught her fall. Plaintiff responded that the script did not instruct her to do that. Talton disagreed, so Plaintiff pulled up the script, which directed Plaintiff to grab her scene partner's thigh. Talton then told Plaintiff that her scene partner would be wearing a prosthetic penis and insisted that she grab the prosthetic. Plaintiff, who felt pressured into doing as she was directed, acquiesced rather than protest in the moment and hold up production.

36.    Plaintiff's sixth and final simulated sex scene was filmed later that night, on November 24, 2024. Again, the intimacy coordinator was not present. Again, the set was not closed. Plaintiff was filmed in the back seat of a car on the side of a busy street in Hollywood; from her seat, Plaintiff heard and saw bystanders nearby who were not affiliated with the production. One cameraman sat in the front seat, filming. Another cameraman filmed through an open rear window. Because the intimacy coordinator was not on set, Plaintiff handed her clothes to the cameraman through the window.

37.    As the camera began to roll, Plaintiff endured increasing discomfort as she performed this simulated sex scene in a highly exposed setting, once again clad in a revealing thong and pasties. For the next twenty minutes, Plaintiff recalls blacking in and out of consciousness from

SANSANOWICZ LAW GROUP, P.C.
Attorneys at Law

1  sheer discomfort to the point where Talton repeatedly yelled, "open your eyes." He once again

2  began to freewheel unscripted choreographic directions, shouting at Plaintiff to "climax" repeatedly.

3  Talton then told Plaintiff's scene partner to "go down" on her. When Talton finally ended the scene,

4  Plaintiff witnessed several onlookers watching the scene from the sidewalk directly across the

5  street, directly in front of a motel entrance. She buried her face from view.

6           38.     Plaintiff waited fifteen minutes in this position. The cameras remained trained on her

7  body, even after Talton had yelled "cut." Eventually, Talton approached Plaintiff and began to give

8  her lengthy acting directions while she listened with her face buried, practically naked.

9           39.     After the crew finished filming the car scene, Plaintiff was made to wait several

10  minutes after filming ended before her clothes were returned to her. She was left virtually nude in

11  the back seat of a car on a busy street in Hollywood at night. During these events, Plaintiff felt

12  trapped, paralyzed, and claustrophobic, as she was unable to leave the car without fear of the public

13  writ large from seeing her out on the street, nude.

14  **C.  Defendants Withheld $24,768.78 From Plaintiff After She Complained About the Lack
15       Of Safety On Set During Simulated Sex Scenes.**

16           40.     All versions of Plaintiff's Talent Agreement – first drafted on November 3, 2021, by

17  ALC Productions' attorney – stated that Plaintiff's compensation of $30,000 "shall be paid in

18  weekly installments over the course of principal photography." Plaintiff received her first payment

19  for $5,231.22 on November 18, 2021 (two weeks after principal photography had begun). She did

20  not receive the remaining $24,768.78 until at least January 10, 2022, because she protested

21  Defendants' bad conduct.

22           41.     On or about November 30, 2021, Plaintiff and her team notified ALC Productions in

23  writing about her experience with unsafe conditions on set. Plaintiff offered a detailed account of

24  the safeguards she was promised prior to filming, how each was subsequently disregarded, and how

25  she had been harmed as a result. She shared that the set was unprofessional, that she had been lied

26  to, and that her mental and emotional safety had been compromised. Shortly thereafter, Plaintiff

27  received a phone call from one of the co-executive producers of *A La Carte*, who told her that all

28  producers had received her letter, including producers from AMC Networks' ALLBLK.

SANSANOWICZ LAW GROUP, P.C.
Attorneys at Law

42.     On December 1, 2021, ALC Productions' attorney emailed Plaintiff's attorney stating, "I know a request has been made to pay [Plaintiff] in full and my client is prepared to do so upon receipt of the signed agreement." The lack of a signature, however, had not earlier prevented Defendants from paying Plaintiff (albeit one week late) an initial amount for $5,231.22 on November 18, 2021. Defendants did not pay Plaintiff the remaining balance at any time in December 2021 and continued to maintain through early January 2022 that the reason for the delay in payment was because Plaintiff had not yet signed her Talent Agreement.

43.     During this time, Plaintiff struggled to make ends meet financially.

44.     Defendants finally paid Plaintiff's remaining wages in a check dated January 10, 2022, after receiving an admonition from Plaintiff's attorney. Neither the Talent Agreement nor the Nudity Rider was signed by Plaintiff until January 20, 2022, showing that payment was not contingent upon obtaining Plaintiff's signature.

**D. To Avoid Further Trauma and Contract Violations, Plaintiff Withdrew from Acting in Season Two of *A La Carte*.**

45.     Given her role in the first season, Plaintiff was granted the express option to perform in the second and third seasons of *A La Carte*. However, Plaintiff was unwilling to participate in a television series that had repeatedly refused to honor her safety requests and reports of sexually harassing conduct. She reasonably believed her complaints were not being taken seriously because she was complaining about Dijon Talton, the Executive Producer and Director of the series, and the man in whom ALLBLK had invested its considerable resources in his vision. She was keenly aware of the great power imbalance between producers and actors. At the same time, she was terrified of coming forward with direct complaints of sexual harassment for fear of retaliation, which she understood to be particularly pernicious in the insular and tight-knit community of Hollywood.

46.     On October 20, 2022, Plaintiff – through her representation – informed Talton that she was quitting the television show.

**E. ALLBLK Exercised Control Over *A La Carte* After Acquiring the Series.**

47.     For decades, Hollywood has operated under a simple principle: Sex Sells. ALLBLK's creative vision for *A La Carte* proved to be no exception.

48.     Upon information and belief, ALLBLK exercised creative control over *A La Carte* from the time it acquired the show. Before it was picked up by ALLBLK, the writer upon whose life *A La Carte* is loosely based had written six episodes of the show. In her version, there was only one sex scene in all the episodes combined. It was only when ALLBLK acquired *A La Carte* that AMC Networks' producers insisted that the show, with Talton at the helm, depict a much heavier dose of sex. The writer's initial portrayal of romance on the show was sidelined in favor of this sex-heavy through-line; despite having written *A La Carte*, this writer, upon information and belief, was excluded by ALLBLK and did not appear on set during filming.

49.     Brett Dismuke, General Manager/Head of Content of ALLBLK (listed on Dismuke's biography page as a division of the "AMC Networks brand"), served as an Executive Producer for *A La Carte*. Dismuke visited the set of *A La Carte* midway through the three-week shoot schedule to oversee production. Talton introduced Dismuke to Plaintiff and several other cast members as an executive from ALLBLK, reinforcing Plaintiff's understanding and belief that ALLBLK and AMC Networks had executive power over the show.

50.     On November 14, 2022, one month after Plaintiff quit the show, Dismuke sent Plaintiff an Instagram message requesting Plaintiff call him, ostensibly to try to convince her to return to the show. Plaintiff was too traumatized to return his message.

## FIRST CAUSE OF ACTION

### SEXUAL HARASSMENT, IN VIOLATION OF GOV'T CODE § 12940(j)

#### (Against All Defendants)

51.     Plaintiff incorporates by reference and re-alleges the allegations contained in paragraphs 1 through 50, inclusive, as though fully set forth herein.

52.     At all times relevant herein, Plaintiff was an employee of Defendants.

53.     At all times relevant, Defendants were employers within the definition of the Fair Employment and Housing Act, California Government Code sections 12926(d) and 12940(a), *et seq.* ("FEHA").

54.     The FEHA makes it an unlawful practice for an employer to harass an employee because of her sex or gender. Gov't Code §12940(j)(1). It is a further unlawful practice for an

1  employer to fail to take immediate and appropriate corrective action if the employer, or its agents or

2  supervisors, knew or should have known of harassing conduct. *Id.*

3      55.    During her employment, Plaintiff was subjected to a hostile work environment that

4  was facilitated, condoned, and encouraged by Defendants, including by Dijon Talton, the Director

5  and Executive Producer of the show. For example, Talton engaged in harassing conduct by

6  directing Plaintiff to participate in, and be subjected to, non-consensual sexual acts while filming on

7  the set of *A La Carte*, particularly without the prior agreed-upon guardrails of 48-hour advanced

8  notice, adequate body coverings, and an intimacy coordinator present at all times to ensure the

9  reasonableness of the choreography of the simulated sex scenes and that the set would be closed to

10 non-essential personnel. Plaintiff was made to film simulated sex scenes in a public bathroom and

11 in the back seat of a car parked adjacent to a busy street in Hollywood at night, where she was

12 clearly visible to onlookers. Defendants also repeatedly captured Plaintiff's nude body on camera,

13 despite her protestations and their contractual obligations to not expose her. Plaintiff frequently

14 found herself surrounded by a cast and crew of only men, which left her feeling unsafe.

15     56.    Moreover, after Plaintiff raised concerns about the lack of an intimacy coordinator,

16 that simulated sex scenes were being filmed on open sets, and that she was not receiving the

17 requisite clothing to cover her body both during and after filming, Talton told Plaintiff people were

18 complaining she was acting like a "diva." Not once did a male actor find himself thrust into an

19 unscripted simulated sex scene only to look up and find a room full of women gazing at him. Nor

20 was a male actor criticized for acting like a "diva." Plaintiff endured this harassment because of her

21 sex.

22     57.    The harassing conduct was severe, and it was pervasive, such that it altered the

23 conditions of her employment and created an abusive work environment. Plaintiff repeatedly

24 complained to her talent agents, manager, entertainment attorney, the intimacy coordinator, and

25 Talton about the harassing conduct and hostile work environment on set.

26     58.    A reasonable woman in Plaintiff's circumstances would have considered the work

27 environment to be hostile or abusive.

28     59.    Defendants did not take immediate and corrective action to stop or prevent the

SANSANOWICZ LAW GROUP, P.C.
Attorneys at Law

1    sexually harassing conduct.

2        60.    Such sexually harassing conduct violated the FEHA and was a substantial factor in

3    causing damage and injury to Plaintiff as alleged herein.

4        61.    As a direct and foreseeable result of the aforesaid acts of Defendant, Plaintiff has lost

5    and will continue to lose income and benefits in an amount to be proven at the time of trial.

6    Plaintiff claims such amount as damages together with pre-judgment interest pursuant to Civil Code

7    sections 3287 and 3288 and/or any other provision of law providing for pre-judgment interest.

8        62.    As a result of the aforesaid acts of Defendants, Plaintiff claims general damages for

9    mental and emotional distress and aggravation in an amount to be proven at the time of trial.

10        63.    The above-described acts of Defendants, by and through their managing agents,

11    officers, or directors, were engaged in with a deliberate, cold, callous, fraudulent, and intentional

12    manner to injure and damage Plaintiff and/or with a conscious disregard for Plaintiff's rights. Such

13    acts were despicable, and constitute malice, fraud and/or oppression within the meaning of Civil

14    Code section 3294. Plaintiff requests an assessment of punitive damages against Defendants, in an

15    amount to be proven at the time of trial.

16        64.    As a direct and proximate result of Defendants' acts, as alleged above, Plaintiff has

17    necessarily incurred and will continue to incur attorney's fees and costs in an amount to be proven

18    at the time of trial. Plaintiff is entitled to recover prevailing party attorney's fees and costs pursuant

19    to Government Code Section 12965(b), and by any other relevant statutory entitlements.

20                    **SECOND CAUSE OF ACTION**

21        **GENDER DISCRIMINATION, IN VIOLATION OF GOV'T CODE §12940(a)**

22                    **(Against All Defendants)**

23        65.    Plaintiff incorporates by reference and re-alleges the allegations contained in

24    paragraphs 1 through 64 inclusive, as though fully set forth herein.

25        66.    At all relevant times herein, Plaintiff was an employee of Defendants.

26        67.    At all times relevant, Defendants were employers within the definition of the FEHA,

27    California Government Code sections 12926(d) and 12940(a), *et seq.*

28        68.    The FEHA makes it an unlawful practice for employers to discriminate against an

SANSANOWICZ LAW GROUP, P.C.
Attorneys at Law

- 13 -
COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1  employee in the terms, conditions, or privileges of employment because of the employee's sex or

2  gender. Gov't Code §§12940(a), (c).

3      69.    During her employment, Plaintiff was subjected to a hostile work environment that

4  was facilitated, condoned, and encouraged by officers of Defendants who engaged in discriminatory

5  conduct and who subjected Plaintiff to different treatment because of her gender. Plaintiff was

6  repeatedly asked to simulate sexual acts that exceeded the scope of both contract and consent. Her

7  male counterparts were not. While on an open set on a public street in Hollywood, Plaintiff was

8  required to remove her shirt. She was provided only bare coverage over her nipples. She was left

9  undressed for fifteen minutes after the end of shooting; no one on set brought her a shirt or

10  underwear to cover up. While a male actor may feel comfortable exposing his chest at work and in

11  public, Plaintiff did not, as would any reasonable woman.

12      70.    Upon information and belief, Defendants provided male actors with prosthetics and

13  other coverings—such as football cups and pieces of cardboard—to shield their genitals. No such

14  protective coverage was provided to the women on set, including Plaintiff.

15      71.    When Plaintiff complained about these conditions to her managers and directors,

16  Defendants repeatedly assured her that proper safeguards would be established. These assurances

17  were illusory, as Plaintiff endured continued discrimination through the final day of shooting. The

18  intimacy coordinator rarely was on hand to give Plaintiff clothing or to direct intimate

19  choreography.

20      72.    Defendants' actions intentionally created or knowingly permitted working conditions

21  to exist that were so intolerable to Plaintiff that she had no reasonable alternative but to quit the

22  show. A reasonable woman in her position would have done the same. Plaintiffs gender was a

23  substantial motivating reason for this constructive discharge.

24      73.    Defendants had an employment practice of providing insufficient safeguards,

25  practices, and policies to ensure the mental and physical well-being of women, including Plaintiff,

26  on the set of *A La Carte*. Defendants further filmed Plaintiff's naked body parts despite her lack of

27  consent and her repeated requests that she be filmed in such a way as to not expose nude body.

28  Similarly situated male actors were not subjected to these requirements or conditions.

- 14 -

74.     Such conduct violates the FEHA and was a substantial factor in causing damage and injury to Plaintiff as alleged herein.

75.     As a direct and foreseeable result of the aforesaid acts of Defendant, Plaintiff has lost and will continue to lose income and benefits in an amount to be proven at the time of trial. Plaintiff claims such amount as damages together with pre-judgment interest pursuant to Civil Code sections 3287 and 3288 and/or any other provision of law providing for pre-judgment interest.

76.     As a result of the aforesaid acts of Defendants, Plaintiff claims general damages for mental and emotional distress and aggravation in an amount to be proven at the time of trial.

77.     The above-described acts of Defendants, by and through their managing agents, officers, or directors, were engaged in with a deliberate, cold, callous, fraudulent, and intentional manner to injure and damage Plaintiff and/or with a conscious disregard for Plaintiff's rights. Such acts were despicable, and constitute malice, fraud and/or oppression within the meaning of Civil Code section 3294. Plaintiff requests an assessment of punitive damages against Defendants, in an amount to be proven at the time of trial.

78.     As a direct and proximate result of Defendants' acts, as alleged above, Plaintiff has necessarily incurred and will continue to incur attorney's fees and costs in an amount to be proven at the time of trial. Plaintiff is entitled to recover prevailing party attorney's fees and costs pursuant to Government Code Section 12965(b), and by any other relevant statutory entitlements.

## THIRD CAUSE OF ACTION

### FEHA RETALIATION, IN VIOLATION OF GOV'T CODE §12940(h)

#### (Against All Defendants)

79.     Plaintiff incorporates by reference and re-alleges the allegations contained in paragraphs 1 through 78, inclusive, as if fully set forth herein.

80.     At all relevant times herein, Plaintiff was an employee of Defendants.

81.     At all times relevant, Defendants were employers within the definition of the FEHA, California Government Code sections 12926(d) and 12940(a), *et seq.*

82.     Plaintiff opposed Defendants' harassing and discriminatory conduct based on her sex and/or gender.

SANSANOWICZ LAW GROUP, P.C.
Attorneys at Law

83.     As a result, Plaintiff was subjected to further harassment and intimidation, including but not limited to being admonished by the show's Director and Executive Producer that people were complaining that she was acting like a "diva".

84.     Further, Defendants withheld $24,768.78 from Plaintiff for nearly 10 weeks after the end of filming *A La Carte*. These funds were due and payable to Plaintiff in equal installments after each week of filming, from November 7, 2021, through November 24, 2021.

85.     Plaintiff's opposition to sex harassment and gender discrimination was a substantial motivating reason for Defendants' decision to take adverse employment actions against her.

86.     Such conduct violates the FEHA and was a substantial motivating factor in causing damage and injury to Plaintiff as alleged herein.

87.     As a direct and foreseeable result of the aforesaid acts of Defendants, Plaintiff has lost and will continue to lose income and benefits in an amount to be proven at the time of trial. Plaintiff claims such amount as damages together with pre-judgment interest pursuant to Civil Code section 3287 and 3288 and/or any other provision of law providing for pre-judgment interest.

88.     As a result of the aforesaid acts of Defendants, Plaintiff claims general damages for mental and emotional distress and aggravation in an amount to be proven at the time of trial.

89.     The above-described acts of Defendants, by and through their managing agents, officers, or directors, were engaged in with a deliberate, cold, callous, fraudulent, and intentional manner to injure and damage Plaintiff and/or with a conscious disregard for Plaintiff's rights. Such acts were despicable, and constitute malice, fraud and/or oppression within the meaning of Civil Code section 3294. Plaintiff requests an assessment of punitive damages against Defendants, in an amount to be proven at the time of trial.

90.     As a direct and proximate result of Defendants' acts, as alleged above, Plaintiff has necessarily incurred and will continue to incur attorney's fees and costs in an amount to be proven at the time of trial. Plaintiff is entitled to recover prevailing party attorney's fees and costs pursuant to the Government Code Section 12965(b), and by any other relevant statutory entitlements.

///

///

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

**FOURTH CAUSE OF ACTION**

**FAILURE TO PREVENT, IN VIOLATION OF GOV'T CODE § 12940(k)**

**(Against All Defendants)**

91.    Plaintiff incorporates by reference and re-alleges the allegations contained in paragraphs 1 through 90 inclusive, as if fully set forth herein.

92.    Plaintiff was subjected to FEHA harassment and discrimination in the course of her employment with Defendants.

93.    Despite reasonable and repeated notice, Defendants failed to take reasonable steps to prevent harassment and discrimination, which caused harm to Plaintiff.

94.    Defendants' conduct violates the FEHA and has resulted in damage and injury to Plaintiff as alleged herein.

95.    As a direct and foreseeable result of the aforesaid acts of Defendants, Plaintiff has lost and will continue to lose income and benefits in an amount to be proven at the time of trial. Plaintiff claims such amount as damages together with pre-judgment interest pursuant to Civil Code section 3287 and/or any other provision of law providing for pre-judgment interest.

96.    As a result of the aforesaid acts of Defendants, Plaintiff claims general damages for mental and emotional distress and aggravation in an amount to be proven at the time of trial.

97.    The above-described acts of Defendants, by and through their managing agents, officers, or directors, were engaged in with a deliberate, cold, callous, fraudulent, and intentional manner to injure and damage Plaintiff and/or with a conscious disregard for Plaintiff's rights. Such acts were despicable, and constitute malice, fraud and/or oppression within the meaning of Civil Code section 3294, and were ratified by Defendants through their officers, directors, and/or managing agents. Plaintiff requests an assessment of punitive damages against Defendants, in an amount to be proven at the time of trial.

98.    As a direct and proximate result of Defendants' acts, as alleged above, Plaintiff has necessarily incurred and will continue to incur attorney's fees and costs in an amount to be proven at the time of trial. Plaintiff is entitled to recover prevailing party attorney's fees and costs pursuant to the Government Code Section 12965(b), and by any other relevant statutory entitlements.

SANSANOWICZ LAW GROUP, P.C.
Attorneys at Law

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

**FIFTH CAUSE OF ACTION**

**WHISTLEBLOWER RETALIATION, IN VIOLATION OF LABOR CODE § 1102.5(b)**

**(Against All Defendants)**

99.     Plaintiff incorporates by reference and re-alleges the allegations contained in paragraphs 1 through 98, inclusive, as if fully set forth herein.

100.    At all relevant times, Labor Code section 1102.5 was in full force and effect and was binding on Defendants. Section 1102.5, subdivision (b), provides in relevant part, "An employer, or any person acting on behalf of the employer, shall not retaliate against an employee for disclosing information… to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance… if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties."

101.    Plaintiff complained to Talton and to the intimacy coordinator, each of whom had the authority to investigate and/or correct a workplace violation, about the lack of scripted, choreographed, and consensual simulated sex scenes on closed sets for the filming of *A La Carte*. Plaintiff complained she was not given proper clothing to cover her body, as agreed upon, and that she was filmed naked (or partially nude) without her consent. She further complained about the lack of physical examinations of actors to avoid the transmission of venereal disease.

102.    Plaintiff had reasonable cause to believe that such conduct violated the law, including but not limited to Labor Code section 6400 (for failure to create "a place of employment that is safe and healthful for the employees therein") Government Code sections 12940(a) and (j) (for FEHA gender discrimination and sex harassment, respectively), and 2 C.C.R. § 11029(b).

103.    Instead of investigating Plaintiff's complaints, Defendants continued the same unsafe, unhealthful, harassing, and discriminatory conduct, and then retaliated against Plaintiff by withholding nearly $25,000 of her wages. Plaintiff's complaints were a substantial motivating factor in the adverse employment actions Defendants took against her.

104.    As a direct and foreseeable result of the aforesaid acts of Defendants, Plaintiff has

1  lost and will continue to lose income and benefits in an amount to be proven at the time of trial.

2  Plaintiff claims such amount as damages together with pre-judgment interest pursuant to Civil Code

3  sections 3287 and 3288 and/or any other provision of law providing for pre-judgment interest.

4       105.    As a result of the aforesaid acts of Defendants, Plaintiff claims general damages for

5  mental and emotional distress and aggravation in an amount to be proven at the time of trial.

6       106.    The above-described acts of Defendants, by and through their managing agents,

7  officers, or directors, were engaged in with a deliberate, cold, callous, fraudulent, and intentional

8  manner to injure and damage Plaintiff and/or with a conscious disregard for Plaintiff's rights. Such

9  acts were despicable, and constitute malice, fraud and/or oppression within the meaning of Civil

10  Code section 3294. Plaintiff requests an assessment of punitive damages against Defendants, in an

11  amount to be proven at the time of trial.

12       107.    Pursuant to Section 1102.5(j), Plaintiff is entitled to recover reasonable prevailing

13  party attorney's fees.

14  **SIXTH CAUSE OF ACTION**

15  **PROMISSORY FRAUD, IN VIOLATION OF CIVIL CODE §§ 1572, 1709, 1710**

16  **(Against All Defendants)**

17       108.    Plaintiff incorporates by reference and re-alleges the allegations contained in

18  paragraphs 1 through 107, inclusive, as if fully set forth herein.

19       109.    At all times relevant to this action, Civil Code section 1572 was in effect and binding

20  on Defendants. Section 1572 defines "actual fraud" as including, "A promise made without any

21  intention of performing it…with intent to deceive another party thereto, or to induce him to enter

22  into [a] contract."

23       110.    At all times relevant to this action, Civil Code section 1709 was in effect and binding

24  on Defendants. Section 1709 provides, "One who willfully deceives another with intent to induce

25  him to alter his position to his injury or risk, is liable for any damage which he thereby suffers."

26       111.    At all times relevant to this action, Civil Code section 1710 was in effect and binding

27  on Defendants. Section 1710 defines a "deceit" as including, "A promise, made without any

28  intention of performing it."

SANSANOWICZ LAW GROUP, P.C
Attorneys at Law

- 19 -

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

112.    Defendants made false promises to Plaintiff, including that: (1) Defendants would not film any portion of Plaintiff's body which would ordinarily be covered by a standard bikini (not a thong); (2) all simulated sex scenes would be scripted, shot on a closed set, and would be filmed pursuant to all SAG-AFTRA guidelines; (3) an intimacy coordinator would be present during all simulated sex scenes to walk through choreography and onset safety; (4) all actors participating in simulated sex scenes would undergo a physical examination to prevent against the transmission of venereal disease; (5) Defendant would password protect all links to Plaintiff's simulated sex scenes produced for Plaintiff's review; and (6) Plaintiff's entire wages would be paid in equal weekly installments over the course of principal photography.

113.    Defendants did not intend to keep these promises when they were made. These promises were illusory and made only to convince Plaintiff to offer her services within the limited time constraints (roughly three weeks) that Defendants had to film *A La Carte*.

114.    Defendants offered these illusory assurances to Plaintiff with intent to induce her reliance. Defendants knew that Plaintiff would not agree to film *A La Carte* – much less to perform simulated sex scenes on set – if the above enumerated promises were not kept.

115.    Plaintiff reasonably relied on these promises. A reasonable person in Plaintiff's position would believe her director and intimacy coordinator when assured they would implement safeguards related to the filming of simulated sex scenes on the set of a professional TV series. In fact, Plaintiff did rely on these promises. She made it clear to Defendants that, for her to perform her role, she would need guarantees that the above enumerated promises would be carried out on set. These demands were not only communicated by Plaintiff, but by her talent agency, manager, and attorney. At the time the promises were made, on or about November 7, 2021 – the date of filming Plaintiff's first simulated sex scene – it was not obvious to Plaintiff, nor did she have enough information to determine, that Defendants' promises were false.

116.    Plaintiff's reliance on Defendants' false promises was a substantial factor in causing her harm. On six separate occasions, Plaintiff filmed simulated sex scenes after receiving a renewed promise from Defendants that safeguards would be made available to her. Without these assurances and her subsequent reliance upon them, Plaintiff would not have performed the scenes and

SANSANOWICZ LAW GROUP, P.C.
Attorneys at Law

1    experienced harm.

2        117.    As a direct and foreseeable result of the aforesaid acts of Defendants, Plaintiff has

3    lost and will continue to lose income and benefits in an amount to be proven at the time of trial.

4    Plaintiff claims such amount as damages together with pre-judgment interest pursuant to Civil Code

5    sections 3287 and 3288 and/or any other provision of law providing for pre-judgment interest.

6        118.    As a result of the aforesaid acts of Defendants, Plaintiff claims general damages for

7    mental and emotional distress and aggravation in an amount to be proven at the time of trial.

8        119.    The above-described acts of Defendants, by and through their managing agents,

9    officers, or directors, were engaged in with a deliberate, cold, callous, fraudulent, and intentional

10   manner to injure and damage Plaintiff and/or with a conscious disregard for Plaintiff's rights. Such

11   acts were despicable, and constitute malice, fraud and/or oppression within the meaning of Civil

12   Code section 3294. Plaintiff requests an assessment of punitive damages against Defendants, in an

13   amount to be proven at the time of trial.

## SEVENTH CAUSE OF ACTION

### BREACH OF CONTRACT

### (Against Defendant ALC Productions)

17       120.    Plaintiff incorporates by reference and re-alleges the allegations contained in

18   paragraphs 1 through 119, inclusive, as if fully set forth herein.

19       121.    As alleged herein, on or about November 7, 2021, in the State of California, Plaintiff

20   and ALC Productions entered into a written Talent Agreement, the terms of which were that ALC

21   Productions was to pay Plaintiff $5,000 per episode for six episodes for a total of $30,000, where

22   such fees shall be paid in weekly installments over the course of principal photography. The Talent

23   Agreement further specified that ALC Productions "shall provide closed sets during any filming of

24   [simulated sex] scenes and shall provide an intimacy coordinator to provide further clarity on the

25   details of the scene(s), walk [Plaintiff] through its choreography, and address any questions about

26   onset safety."

27       122.    At all times relevant, the Talent Agreement referred its terms as being "set forth on

28   November 1, 2021."

SANSANOWICZ LAW GROUP, P.C
Attorneys at Law

123.    The contractual terms of the Talent Agreement were clearly and explicitly written in plain language.

124.    In the Talent Agreement, the parties agreed to exchange something of value. Specifically, ALC Productions agreed to pay Plaintiff $30,000 and to provide a work environment that safeguarded Plaintiff's safety and well-being. In return, Plaintiff agreed to perform as an actor in the series *A La Carte*.

125.    The parties agreed to the terms of the Talent Agreement on November 7, 2021. Plaintiff accepted by acting in the show, including performing simulated sex scenes under the direction of ALC Productions. By continuing to film Plaintiff, ALC Productions performed under the Agreement and agreed to be bound by its terms.

126.    Moreover, as alleged herein, on or about October 30, 2021, in the State of California, Plaintiff and ALC Productions entered into an oral agreement whereby Plaintiff agreed to perform as an actor in the series *A La Carte* in exchange for the promise that her performance would not require nudity and that an intimacy coordinator would be available to walk through choreography and maintain safety on set during simulated sex scenes.

127.    The parties agreed to exchange something of value in this oral agreement. Specifically, Defendant agreed to pay Plaintiff $30,000, and Plaintiff agreed to perform as an actor in the series *A La Carte*.

128.    The parties agreed to be bound to this oral contract via oral affirmation made on or about October 30, 2021.

129.    By acting in all six episodes of *A La Carte*, Plaintiff performed all her requirements under the Talent Agreement and the oral contract. Defendant ALC Productions did not. Instead, ALC Productions failed to timely pay Plaintiff for her services and to provide choreography, closed sets, and SAG-AFTRA-mandated safety measures during the filming of simulated sex scenes. In so doing, ALC Productions breached the Talent Agreement and oral agreement entered with Plaintiff.

130.    As a proximate result of the wrongful conduct of Defendant ALC Productions, Plaintiff has suffered and continues to sustain substantial losses in earnings and other employment benefits in an amount according to proof at the time of trial. Defendant ALC Productions owes

SANSANOWICZ LAW GROUP, P.C.
Attorneys at Law

1  Plaintiff interest for delayed payment for her services, as well as any consequential damages,

2  including the amount Plaintiff would have earned for performing in Season 2 of *A La Carte*.

3  ### EIGHTH CAUSE OF ACTION

4  ### CONSTRUCTIVE DISCHARGE IN VIOLATION OF PUBLIC POLICY

5  **(Against All Defendants)**

6  131.    Plaintiff incorporates by reference and re-alleges the allegations contained in

7  paragraphs 1 through 130, inclusive, as if fully set forth herein.

8  132.    At all times relevant, Plaintiff was an employee of Defendants.

9  133.    Plaintiff's employment was terminated because of Defendants' violation of

10 fundamental and substantial public policies that were well-established at the time of her

11 termination. Specifically, it is against fundamental California public policy to sexually harass an

12 employee, to discriminate against her based on her gender, to retaliate against her for opposing such

13 conduct, and to fail to prevent harassment or discrimination under the FEHA, as detailed in the

14 First, Second, Third, and Fourth Causes of Action, and as recognized under Government Code

15 sections 12920, 12940(a), 12940(h), 12940(j), and 12940(k).

16 134.    Government Code section 12920.5 embodies the Legislature's intent, providing, "In

17 order to eliminate discrimination, it is necessary to provide effective remedies that will both

18 prevent and deter unlawful employment practices and redress the adverse effects of those practices

19 on aggrieved persons."

20 135.    Further, pursuant to Government Code section 12921, "The opportunity to seek,

21 obtain, and hold employment without discrimination because of…sex, gender…is hereby

22 recognized as and declared to be a civil right."

23 136.    Moreover, it is against fundamental California public policy to retaliate against an

24 employee for opposing conduct she reasonably believes violated the law, as detailed in Labor Code

25 section 1102.5(b). *See Green v. Ralee Eng'g Co.* (1998) 19 Cal.4th 66, 77 (affirmed by *Lawson v.*

26 *PPG Architectural Finishes, Inc.* (2022) 12 Cal.5th 703, 709) (Section 1102.5 "reflects the broad

27 public policy interest in encouraging workplace whistle-blowers to report unlawful acts without

28 fearing retaliation.").

SANSANOWICZ LAW GROUP, P.C
Attorneys at Law

137.    An actual controversy has arisen and now exists between Plaintiff and Defendants concerning the parties' respective rights and duties, as it is believed that Defendants may contend they did not discriminate or retaliate against Plaintiff because of her gender, her opposition to such discrimination, or her protected whistleblowing conduct. Plaintiff, by contrast, alleges Defendants did in fact discriminate and retaliate against her. Plaintiff therefore is informed and believes, and on that basis alleges, that Defendants will dispute Plaintiff's sexual harassment, gender discrimination, FEHA retaliation, failure to prevent FEHA discrimination or retaliation, and whistleblower retaliation causes of action.

138.    Pursuant to Code of Civil Procedure section 1060, Plaintiff seeks a judicial determination of Plaintiff's rights and duties, and a declaration that Defendants discriminated against, retaliated against, and discharged Plaintiff because of her protected characteristics or because she engaged in protected activity, and that such discrimination and/or protected conduct was a substantial motivating factor in Defendants' decision to terminate Plaintiff.

139.    A judicial declaration is necessary and appropriate so that Plaintiff, on her own behalf and on behalf of employees in the State of California, and in conformity with the public policy of the State, obtain a judicial declaration of Employer Defendants' wrongdoing and to prospectively condemn such discriminatory employment policies or practices. *Harris v. City of Santa Monica* (2013) 56 Cal.4th 203, 211.

140.    A judicial declaration is also necessary and appropriate so that Defendants may also be aware of their obligations under the law to not engage in discriminatory or retaliatory employment practices and to not violate the law in the future. Such relief is necessary because other employees of Defendants will be irreparably harmed if the above-described retaliation is allowed to continue.

141.    Defendants intentionally created or knowingly permitted these working conditions.

142.    These working conditions were so intolerable that a reasonable person in Plaintiff's position would have no reasonable alternative except to resign.

143.    Plaintiff was slated to perform in the second series of *A La Carte*. However, because of these intolerable working conditions, Plaintiff resigned and decided not to perform in the second

SANSANOWICZ LAW GROUP, P.C
Attorneys at Law

1   season.

2       144.   Plaintiff suffered harm that was substantially caused by the working conditions

3   created by Defendants.

4       145.   As a proximate result of the wrongful conduct of Defendants, and each of them,

5   Plaintiff has suffered and continues to sustain substantial losses in earnings and other employment

6   benefits in an amount according to proof at the time of trial.

7       146.   As a proximate result of the wrongful conduct of Defendants, and each of them,

8   Plaintiff has suffered emotional distress and other general damages, in an amount according to proof

9   at the time of trial.

10      147.   The actions of Defendants as alleged herein were carried out with malice,

11  willfulness, reckless indifference to the rights of Plaintiff, and/or with a conscious disregard for

12  Plaintiff's rights, with full knowledge of their unlawfulness, and with the intent to deprive Plaintiff

13  of rights guaranteed under the law. Defendants' conduct described herein was engaged in by

14  officers, directors, and/or managing agents for Defendants and/or ratified by officers, directors,

15  and/or managing agents. and constitute malice, fraud and/or oppression within the meaning of Civil

16  Code section 3294. Plaintiff requests an assessment of punitive damages against Defendants, in an

17  amount to be proven at the time of trial.

18  **<u>PRAYER FOR RELIEF</u>**

19      WHEREFORE, Plaintiff prays for judgment as follows:

20  1.   For an award of general damages in an amount according to proof;

21  2.   For an award of special damages in an amount according to proof;

22  3.   For an award of punitive damages in an amount appropriate to punish Defendants and to

23  make an example of Defendants to the community;

24  4.   For pre-judgment interest at the prevailing legal rate;

25  5.   For reasonable attorney's fees and costs of suit; and

26  6.   For such other and further relief as this Court deems just and proper.

27  ///

28  ///

SANSANOWICZ LAW GROUP, P.C.
Attorneys at Law

- 25 -

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby requests a jury trial on the claims so triable.

Dated:  October 18, 2024

SANSANOWICZ LAW GROUP, P.C.

By

Leonard H. Sansanowicz, Esq.
Attorney for Plaintiff Jane Doe

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

SANSANOWICZ LAW GROUP, P.C.
Attorneys at Law

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*:
Leonard H. Sansanowicz, Esq.                                    SBN: 255729
Sansanowicz Law Group, P.C.
21031 Ventura Boulevard, Suite 701, Woodland Hills, CA 91364

TELEPHONE NO.: (818) 639-8510    FAX NO. *(Optional)*: (818) 639-8511
E-MAIL ADDRESS: leonard@law-slg.com
ATTORNEY FOR *(Name)*: PLAINTIFF JANE DOE

**FOR COURT USE ONLY**

Electronically FILED by
Superior Court of California,
County of Los Angeles
10/18/2024 11:35 AM
David W. Slayton,
Executive Officer/Clerk of Court,
By S. Rulz, Deputy Clerk

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** LOS ANGELES
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS: 111 North Hill Street
CITY AND ZIP CODE: Los Angeles, 90012
BRANCH NAME: Stanley Mosk Courthouse

CASE NAME: Jane Doe v. A La Carte Productions, LLC, et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| [X] Unlimited (Amount demanded exceeds $25,000) | [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter  [ ] Joinder | | 24STCV27316 |
| | | Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | | JUDGE: |
| | | | | DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1.  Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[X] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2.  This case [ ] is  [X] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
    a. [ ] Large number of separately represented parties
    b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
    c. [ ] Substantial amount of documentary evidence
    d. [ ] Large number of witnesses
    e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
    f. [ ] Substantial postjudgment judicial supervision

3.  Remedies sought *(check all that apply)*: a. [X] monetary  b. [X] nonmonetary; declaratory or injunctive relief  c. [X] punitive
4.  Number of causes of action *(specify)*:
5.  This case [ ] is  [X] is not  a class action suit.
6.  If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date: 10/18/24

Leonard H. Sansanowicz, Esq.
_____
(TYPE OR PRINT NAME)                                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
• Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
• File this cover sheet in addition to any cover sheet required by local court rule.
• If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
• Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10

**INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET**                    CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases, only parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

**CASE TYPES AND EXAMPLES**

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
    Medical Malpractice– Physicians & Surgeons
    Other Professional Health Care Malpractice
Other PI/PD/WD (23)
    Premises Liability (e.g., slip and fall)
    Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
    Intentional Infliction of Emotional Distress
    Negligent Infliction of Emotional Distress
    Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
    Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
    Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/ Warranty
    Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
    Auto Subrogation
    Other Coverage
Other Contract (37)
    Contractual Fraud
    Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court Case Matter
    Writ–Other Limited Court Case Review
Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
    Abstract of Judgment (Out of County)
    Confession of Judgment *(non-domestic relations)*
    Sister State Judgment
    Administrative Agency Award *(not unpaid taxes)*
    Petition/Certification of Entry of Judgment on Unpaid Taxes
    Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-harassment)*
    Mechanics Lien
    Other Commercial Complaint Case *(non-tort/non-complex)*
    Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late Claim
    Other Civil Petition

| SHORT TITLE Jane Doe v. A La Carte Productions, LLC, et al. | CASE NUMBER 24STCV27316 |
|---|---|

## CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION
### (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

**This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court**

**Step 1:** After completing the Civil Case Cover Sheet (Judicial Council form CM-010), find the exact case type in Column A that corresponds to the case type indicated in the Civil Case Cover Sheet.

**Step 2:** In Column B, check the box for the type of action that best describes the nature of the case.

**Step 3:** In Column C, circle the number which explains the reason for the court filing location you have chosen.

### Applicable Reasons for Choosing Courthouse Location (Column C)

| | | | |
|---|---|---|---|
| 1. | Class Actions must be filed in the Stanley Mosk Courthouse, Central District. | 7. | Location where petitioner resides. |
| 2. | Permissive filing in Central District. | 8. | Location wherein defendant/respondent functions wholly. |
| 3. | Location where cause of action arose. | 9. | Location where one or more of the parties reside. |
| 4. | Location where bodily injury, death or damage occurred. | 10. | Location of Labor Commissioner Office. |
| 5. | Location where performance required, or defendant resides. | 11. | Mandatory filing location (Hub Cases – unlawful detainer, limited non-collection, limited collection). |
| 6. | Location of property or permanently garaged vehicle. | | |

| | A<br>Civil Case Cover Sheet Case Type | B<br>Type of Action<br>(check only one) | C<br>Applicable Reasons (see Step 3 above) |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ 2201 Motor Vehicle – Personal Injury/Property Damage/Wrongful Death | 1, 4 |
| | Uninsured Motorist (46) | ☐ 4601 Uninsured Motorist – Personal Injury/Property Damage/Wrongful Death | 1, 4 |
| **Other Personal Injury/ Property Damage/ Wrongful Death** | Other Personal Injury/ Property Damage/ Wrongful Death (23) | ☐ 2301 Premise Liability (e.g., dangerous conditions of property, slip/trip and fall, dog attack, etc.) | 1, 4 |
| | | ☐ 2302 Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, battery, vandalism, etc.) | 1, 4 |
| | | ☐ 2303 Intentional Infliction of Emotional Distress | 1, 4 |
| | | ☐ 2304 Other Personal Injury/Property Damage/Wrongful Death | 1, 4 |
| | | ☐ 2305 Elder/Dependent Adult Abuse/Claims Against Skilled Nursing Facility | 1, 4 |
| | | ☐ 2306 Intentional Conduct – Sexual Abuse Case (in any form) | 1, 4 |

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

| SHORT TITLE  Jane Doe v. A La Carte Productions, LLC, et al. | CASE NUMBER |
|---|---|

| | **A**<br>Civil Case Cover Sheet Case Type | **B**<br>Type of Action<br>(check only one) | **C**<br>Applicable Reasons (see Step 3 above) |
|---|---|---|---|
| **Other Personal Injury/ Property Damage/ Wrongful Death** | | ☐ 2307 Construction Accidents | 1, 4 |
| | | ☐ 2308 Landlord – Tenant Habitability (e.g., bed bugs, mold, etc.) | 1, 4 |
| | Product Liability (24) | ☐ 2401 Product Liability (not asbestos or toxic/ environmental) | 1, 4 |
| | | ☐ 2402 Product Liability – Song-Beverly Consumer Warranty Act (CA Civil Code §§1790-1795.8) (Lemon Law) | 1, 3, 5 |
| | Medical Malpractice (45) | ☐ 4501 Medical Malpractice – Physicians & Surgeons | 1, 4 |
| | | ☐ 4502 Other Professional Health Care Malpractice | 1, 4 |
| **Non-Personal Injury/Property Damage/Wrongful Death Tort** | Business Tort (07) | ☐ 0701 Other Commercial/Business Tort (not fraud or breach of contract) | 1, 2, 3 |
| | Civil Rights (08) | ☐ 0801 Civil Rights/Discrimination | 1, 2, 3 |
| | Defamation (13) | ☐ 1301 Defamation (slander/libel) | 1, 2, 3 |
| | Fraud (16) | ☒ 1601 Fraud (no contract) | 1, 2, 3 |
| | Professional Negligence (25) | ☐ 2501 Legal Malpractice | 1, 2, 3 |
| | | ☐ 2502 Other Professional Malpractice (not medical or legal) | 1, 2, 3 |
| | Other (35) | ☐ 3501 Other Non-Personal Injury/Property Damage Tort | 1, 2, 3 |
| **Employment** | Wrongful Termination (36) | ☒ 3601 Wrongful Termination | 1, 2, 3 |
| | Other Employment (15) | ☐ 1501 Other Employment Complaint Case | 1, 2, 3 |
| | | ☐ 1502 Labor Commissioner Appeals | 10 |
| **Contract** | Breach of Contract / Warranty (06) (not insurance) | ☒ 0601 Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2, 5 |
| | | ☐ 0602 Contract/Warranty Breach – Seller Plaintiff (no fraud/negligence) | 2, 5 |
| | | ☐ 0603 Negligent Breach of Contract/Warranty (no fraud) | 1, 2, 5 |
| | | ☒ 0604 Other Breach of Contract/Warranty (no fraud/ negligence) | 1, 2, 5 |
| | | ☐ 0605 Breach of Rental/Lease Contract (COVID-19 Rental Debt) | 2, 5 |
| | Collections (09) | ☐ 0901 Collections Case – Seller Plaintiff | 5, 6, 11 |
| | | ☐ 0902 Other Promissory Note/Collections Case | 5, 11 |
| | | ☐ 0903 Collections Case – Purchased Debt (charged off consumer debt purchased on or after January 1, 2014) | 5, 6, 11 |
| | | ☐ 0904 Collections Case – COVID-19 Rental Debt | 5, 11 |
| | Insurance Coverage (18) | ☐ 1801 Insurance Coverage (not complex) | 1, 2, 5, 8 |

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

| SHORT TITLE | Jane Doe v. A La Carte Productions, LLC, et al. | CASE NUMBER |
|---|---|---|

| | **A**<br>Civil Case Cover Sheet Case Type | **B**<br>Type of Action<br>(check only one) | **C**<br>Applicable Reasons (see Step 3 above) |
|---|---|---|---|
| **Contract** (Continued) | Other Contract (37) | ☐ 3701 Contractual Fraud | 1, 2, 3, 5 |
| | | ☐ 3702 Tortious Interference | 1, 2, 3, 5 |
| | | ☐ 3703 Other Contract Dispute (not breach/insurance/fraud/ negligence) | 1, 2, 3, 8, 9 |
| **Real Property** | Eminent Domain/ Inverse Condemnation (14) | ☐ 1401 Eminent Domain/Condemnation<br>Number of Parcels _____ | 2, 6 |
| | Wrongful Eviction (33) | ☐ 3301 Wrongful Eviction Case | 2, 6 |
| | Other Real Property (26) | ☐ 2601 Mortgage Foreclosure | 2, 6 |
| | | ☐ 2602 Quiet Title | 2, 6 |
| | | ☐ 2603 Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2, 6 |
| **Unlawful Detainer** | Unlawful Detainer – Commercial (31) | ☐ 3101 Unlawful Detainer – Commercial (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer – Residential (32) | ☐ 3201 Unlawful Detainer – Residential (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer – Post Foreclosure (34) | ☐ 3401 Unlawful Detainer – Post Foreclosure | 2, 6, 11 |
| | Unlawful Detainer – Drugs (38) | ☐ 3801 Unlawful Detainer – Drugs | 2, 6, 11 |
| **Judicial Review** | Asset Forfeiture (05) | ☐ 0501 Asset Forfeiture Case | 2, 3, 6 |
| | Petition re Arbitration (11) | ☐ 1101 Petition to Compel/Confirm/Vacate Arbitration | 2, 5 |
| | Writ of Mandate (02) | ☐ 0201 Writ – Administrative Mandamus | 2, 8 |
| | | ☐ 0202 Writ – Mandamus on Limited Court Case Matter | 2 |
| | | ☐ 0203 Writ – Other Limited Court Case Review | 2 |
| | Other Judicial Review (39) | ☐ 3901 Other Writ/Judicial Review | 2, 8 |
| | | ☐ 3902 Administrative Hearing | 2, 8 |
| | | ☐ 3903 Parking Appeal | 2, 8 |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ 0301 Antitrust/Trade Regulation | 1, 2, 8 |
| | Asbestos (04) | ☐ 0401 Asbestos Property Damage | 1, 11 |
| | | ☐ 0402 Asbestos Personal Injury/Wrongful Death | 1, 11 |

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

| SHORT TITLE | Jane Doe v. A La Carte Productions, LLC, et al. | CASE NUMBER |
|---|---|---|

| | **A**<br>Civil Case Cover Sheet Case Type | **B**<br>Type of Action<br>(check only one) | **C**<br>Applicable Reasons (see Step 3 above) |
|---|---|---|---|
| **Provisionally Complex Litigation** (Continued) | Construction Defect (10) | ☐ 1001 Construction Defect | 1, 2, 3 |
| | Claims Involving Mass Tort (40) | ☐ 4001 Claims Involving Mass Tort | 1, 2, 8 |
| | Securities Litigation (28) | ☐ 2801 Securities Litigation Case | 1, 2, 8 |
| | Toxic Tort Environmental (30) | ☐ 3001 Toxic Tort/Environmental | 1, 2, 3, 8 |
| | Insurance Coverage Claims from Complex Case (41) | ☐ 4101 Insurance Coverage/Subrogation (complex case only) | 1, 2, 5, 8 |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐ 2001 Sister State Judgment | 2, 5, 11 |
| | | ☐ 2002 Abstract of Judgment | 2, 6 |
| | | ☐ 2004 Administrative Agency Award (not unpaid taxes) | 2, 8 |
| | | ☐ 2005 Petition/Certificate for Entry of Judgment Unpaid Tax | 2, 8 |
| | | ☐ 2006 Other Enforcement of Judgment Case | 2, 8, 9 |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ 2701 Racketeering (RICO) Case | 1, 2, 8 |
| | Other Complaints (not specified above) (42) | ☐ 4201 Declaratory Relief Only | 1, 2, 8 |
| | | ☐ 4202 Injunctive Relief Only (not domestic/harassment) | 2, 8 |
| | | ☐ 4203 Other Commercial Complaint Case (non-tort/noncomplex) | 1, 2, 8 |
| | | ☐ 4204 Other Civil Complaint (non-tort/non-complex) | 1, 2, 8 |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐ 2101 Partnership and Corporation Governance Case | 2, 8 |
| | Other Petitions (not specified above) (43) | ☐ 4301 Civil Harassment with Damages | 2, 3, 9 |
| | | ☐ 4302 Workplace Harassment with Damages | 2, 3, 9 |
| | | ☐ 4303 Elder/Dependent Adult Abuse Case with Damages | 2, 3, 9 |
| | | ☐ 4304 Election Contest | 2 |
| | | ☐ 4305 Petition for Change of Name/Change of Gender | 2, 7 |
| | | ☐ 4306 Petition for Relief from Late Claim Law | 2, 3, 8 |
| | | ☐ 4307 Other Civil Petition | 2, 9 |

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

| SHORT TITLE  Jane Doe v. A La Carte Productions, LLC, et al. | CASE NUMBER |
|---|---|

**Step 4: Statement of Reason and Address:** Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected. Enter the address, which is the basis for the filing location including zip code. (No address required for class action cases.)

| REASON:<br>☐ 1. ☒ 2. ☒ 3. ☒ 4. ☐ 5. ☐ 6. ☐ 7. ☐ 8. ☒ 9. ☐ 10. ☐ 11 | ADDRESS:<br>4804 Laurel Canyon Blvd., # 1260 |
|---|---|
| CITY: Valley Village      STATE: CA      ZIP CODE: 91607 | |

**Step 5: Certification of Assignment:** I certify that this case is properly filed in the ___Central___ District of the Superior Court of California, County of Los Angeles [Code of Civ. Proc., 392 et seq., and LASC Local Rule 2.3(a)(1)(E)]

Dated: October 18, 2024

_(signature)_

(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.
2. If filing a Complaint, a completed Summons form for issuance by the Clerk.
3. Civil Case Cover Sheet Judicial Council form CM-010.
4. Civil Case Cover Sheet Addendum and Statement of Location form LASC CIV 109 (01/23).
5. Payment in full of the filing fee, unless there is a court order for waiver, partial or schedule payments.
6. A signed order appointing a Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court to issue a Summons.
7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the Summons and Complaint, or other initiating pleading in the case.

**COMPLAINT OF EMPLOYMENT DISCRIMINATION**
**BEFORE THE STATE OF CALIFORNIA**
Civil Rights Department
**Under the California Fair Employment and Housing Act**
**(Gov. Code, § 12900 et seq.)**

**In the Matter of the Complaint of**

███████████

CRD No. 202410-26723418

Complainant,

vs.

A La Carte Productions, LLC
4804 Laurel Canyon Blvd., # 1260
Valley Village, CA 91607

AMC Network Entertainment, LLC
2425 Olympic Boulevard, Suite 400E
Santa Monica, CA 90404

RLJ Entertainment, Inc.
2425 Olympic Boulevard, Suite 400E
Santa Monica, CA 90404

AMC Networks, Inc.
11 Penn Plaza, New York
New York, NY 10001

Respondents

1. Respondent **A La Carte Productions, LLC** is an **employer** subject to suit under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).

2.Complainant is naming **AMC Network Entertainment, LLC** business as Co-Respondent(s).
Complainant is naming **RLJ Entertainment, Inc.** business as Co-Respondent(s).
Complainant is naming **AMC Networks, Inc.** business as Co-Respondent(s).

3. Complainant ███████████, resides in the City of **Woodland Hills**, State of **CA.**

4. Complainant alleges that on or about **October 20, 2022**, respondent took the following adverse actions:

-1-

*Complaint – CRD No. 202410-26723418*

Date Filed: October 18, 2024

CRD-ENF 80 RS (Revised 2024/05)

**Complainant was harassed** because of complainant's sex/gender, sexual harassment-hostile environment.

**Complainant was discriminated against** because of complainant's sex/gender, sexual harassment- hostile environment and as a result of the discrimination was forced to quit, denied any employment benefit or privilege.

**Complainant experienced retaliation** because complainant reported or resisted any form of discrimination or harassment and as a result was forced to quit, denied any employment benefit or privilege.

**Additional Complaint Details:** Complainant is an actor who appeared in an episodic television dramedy in which the script called for her to participate in simulated sex scenes in multiple episodes. Complainant agreed to perform in the series, including in these simulated sex scenes, with strict guidelines in place, including that: (1) each actor in the show would undergo physical examinations to prevent the transmission of venereal disease; (2) all SAG-AFTRA safety protocols would be followed, including having closed sets (meaning that only the essential crew would be present) during filming of simulated sex scenes; (3) the producers would hire an intimacy coordinator to review choreography and maintain safety during all such scenes; (4) any changes to the script that required nudity would be conveyed in writing and would be subject to Complainant's consent at least 48 hours prior to filming (consistent with SAG-AFTRA guidelines); (5) the Director and Executive Producer would "re-work" scenes in the script that directed Complainant to engage in, and be subjected to, physical groping of the genitals; and (6) Complainant would not be filmed wearing anything less than what was covered by a standard bikini (meaning, larger than a thong). In addition, Complainant's talent agents negotiated on her behalf that she was to be dressed in either non-see-through lingerie or non-see-through bra and underwear when shooting simulated sex scenes, and that she would not be filmed in any way that would show full frontal or rear nudity.

Complainant was forced to film scenes that violated her contractual agreements, industry standards, her sense of safety, and her consent. As such, Complainant was subjected to a hostile work environment that was facilitated, condoned, and encouraged by Respondents, including by the Director and Executive Producer (the same person) of the show. For example, the Director engaged in harassing conduct by directing Complainant to participate in, and be subjected to, non-consensual sexual acts while filming on-set, particularly without the prior agreed-upon guardrails of 48-hour advanced notice, adequate body coverings, and an intimacy coordinator present at all times to ensure the reasonableness of the choreography of the simulated sex scenes and that the set would be closed to non-essential personnel. Complainant was made to film simulated sex scenes in a public bathroom and in the back seat of a car parked adjacent to a busy street in Hollywood at night, where she was clearly visible to onlookers, neither of which was a closed set. Respondents also repeatedly captured Complainant's nude body on camera, despite her protestations and their

-2-

*Complaint – CRD No. 202410-26723418*

Date Filed: October 18, 2024

CRD-ENF 80 RS (Revised 2024/05)

1   contractual obligations to not expose her. Complainant frequently found herself surrounded
2   by a cast and crew of only men, which left her feeling unsafe.

3   Moreover, after complaining to the Director about the lack of an intimacy coordinator, that
    simulated sex scenes were being filmed on open sets, and that she was not receiving the
4   requisite clothing to cover her body both during and after filming, the Director told
    Complainant that people were complaining that she was acting like a "diva." Upon
5   information and belief, he did not say the same thing about any male actor on the show.

6
7   The harassing conduct was severe, and it was pervasive, such that it altered the conditions
    of Complainant's employment and created an abusive work environment. Complainant
8   repeatedly complained to her talent agents, manager, entertainment attorney, the intimacy
    coordinator, and the Director about the harassing conduct and hostile work environment on
9   set. A reasonable woman in Complainant's circumstances would have considered the work
    environment to be hostile or abusive. Respondents did not take immediate and corrective
10  action to stop or prevent the sexually harassing conduct. The conduct was directed at
    Complainant because of her sex.
11

12  Respondents' actions intentionally created or knowingly permitted working conditions to
    exist that were so intolerable to Complainant that she had no reasonable alternative but to
13  quit the show. A reasonable woman in her position would have done the same.
    Complainant's gender was a substantial motivating reason for this constructive discharge.
14

15  Respondents retaliated against Complainant for voicing complaints about harassment and
16  discrimination by engaging in further harassing conduct and by withholding her wages.

17

18

19

20

21

22

23

24

25

26                                              -3-
                        *Complaint – CRD No. 202410-26723418*
27
    Date Filed: October 18, 2024
28
                                                        CRD-ENF 80 RS (Revised 2024/05)

VERIFICATION

I, **Leonard Sansanowicz**, am the **Attorney** in the above-entitled complaint.  I have read the foregoing complaint and know the contents thereof.  The matters alleged are based on information and belief, which I believe to be true.

On October 18, 2024, I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

**Woodland Hills, CA**

-4-

*Complaint – CRD No. 202410-26723418*

Date Filed: October 18, 2024

CRD-ENF 80 RS (Revised 2024/05)

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Stanley Mosk Courthouse<br>111 North Hill Street, Los Angeles, CA 90012 | **FILED**<br>Superior Court of California<br>County of Los Angeles<br>**10/18/2024**<br>David W. Slayton, Executive Officer / Clerk of Court<br>By: _____S. Ruiz_____ Deputy |
| **NOTICE OF CASE ASSIGNMENT**<br>**UNLIMITED CIVIL CASE** | |
| **Your case is assigned for all purposes to the judicial officer indicated below.** | CASE NUMBER:<br>24STCV27316 |

### THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT

| | ASSIGNED JUDGE | DEPT | ROOM | | | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|---|---|---|
| ✓ | Timothy Patrick Dillon | 73 | | | | | | |

Given to the Plaintiff/Cross-Complainant/Attorney of Record

on 10/18/2024
   (Date)

David W. Slayton, Executive Officer / Clerk of Court

By S. Ruiz _____, Deputy Clerk

LACIV 190 (Rev 6/18)
LASC Approved 05/06

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

## INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the California Rules of Court, Title 3, Division 7, as applicable in the Superior Court, are summarized for your assistance.

### APPLICATION
The Division 7 Rules were effective January 1, 2007. They apply to all general civil cases.

### PRIORITY OVER OTHER RULES
The Division 7 Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

### CHALLENGE TO ASSIGNED JUDGE
A challenge under Code of Civil Procedure Section 170.6 must be made within **15** days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

### TIME STANDARDS
Cases assigned to the Independent Calendaring Courts will be subject to processing under the following time standards:

### COMPLAINTS
All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days.

### CROSS-COMPLAINTS
Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed. Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

### STATUS CONFERENCE
A status conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint. Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

### FINAL STATUS CONFERENCE
The Court will require the parties to attend a final status conference not more than 10 days before the scheduled trial date. All parties shall have motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested form jury instructions, special jury instructions, and special jury verdicts timely filed and served prior to the conference. These matters may be heard and resolved at this conference. At least five days before this conference, counsel must also have exchanged lists of exhibits and witnesses, and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Three of the Los Angeles Superior Court Rules.

### SANCTIONS
The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules. Such sanctions may be on a party, or if appropriate, on counsel for a party.

**This is not a complete delineation of the Division 7 or Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction. Careful reading and compliance with the actual Chapter Rules is imperative.**

### Class Actions
Pursuant to Local Rule 2.3, all class actions shall be filed at the Stanley Mosk Courthouse and are randomly assigned to a complex judge at the designated complex courthouse. If the case is found not to be a class action it will be returned to an Independent Calendar Courtroom for all purposes.

### *Provisionally Complex Cases
Cases filed as provisionally complex are initially assigned to the Supervising Judge of complex litigation for determination of complex status. If the case is deemed to be complex within the meaning of California Rules of Court 3.400 et seq., it will be randomly assigned to a complex judge at the designated complex courthouse. If the case is found not to be complex, it will be returned to an Independent Calendar Courtroom for all purposes.

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                    GAVIN NEWSOM, GOVERNOR

**Civil Rights Department**                                                                    KEVIN KISH, DIRECTOR

651 Bannon Street, Suite 200 | Sacramento | CA | 95811
1-800-884-1684 (voice) | 1-800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

October 18, 2024

█████████████

21031 Ventura Boulevard, Suite 701
Woodland Hills, CA 91364

RE:   **Notice of Case Closure and Right to Sue**
      CRD Matter Number: 202410-26723418
      Right to Sue: ██████ A La Carte Productions, LLC et al.

Dear ████████████:

This letter informs you that the above-referenced complaint filed with the Civil Rights
Department (CRD) has been closed effective October 18, 2024 because an immediate
Right to Sue notice was requested.

This letter is also your Right to Sue notice. According to Government Code section
12965, subdivision (b), a civil action may be brought under the provisions of the Fair
Employment and Housing Act against the person, employer, labor organization or
employment agency named in the above-referenced complaint. The civil action must be
filed within one year from the date of this letter.

To obtain a federal Right to Sue notice, you must contact the U.S. Equal
Employment Opportunity Commission (EEOC) to file a complaint within 30 days
of receipt of this CRD Notice of Case Closure or within 300 days of the alleged
discriminatory act, whichever is earlier.

Sincerely,


Civil Rights Department

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Stanley Mosk Courthouse<br>111 North Hill Street, Los Angeles, CA 90012 | **FILED**<br>Superior Court of California<br>County of Los Angeles<br>10/21/2024<br>David W. Slayton, Executive Officer / Clerk of Court<br>By: _____ D. Ortiz _____ Deputy |
| PLAINTIFF:<br>Jane Doe | |
| DEFENDANT:<br>A La Carte Productions, LLC, et al. | |
| **NOTICE OF CASE MANAGEMENT CONFERENCE** | CASE NUMBER:<br>24STCV27316 |

TO THE PLAINTIFF(S)/ATTORNEY(S) FOR PLAINTIFF(S) OF RECORD:

You are ordered to serve this notice of hearing on all parties/attorneys of record forthwith, and meet and confer with all parties/attorneys of record about the matters to be discussed no later than 30 days before the Case Management Conference.

Your Case Management Conference has been scheduled at the courthouse address shown above on:

> Date: 03/13/2025      Time: 8:30 AM      Dept.: 73

NOTICE TO DEFENDANT:    THE SETTING OF THE CASE MANAGEMENT CONFERENCE DOES NOT EXEMPT THE DEFENDANT FROM FILING A RESPONSIVE PLEADING AS REQUIRED BY LAW.

Pursuant to California Rules of Court, rules 3.720-3.730, a completed Case Management Statement (Judicial Council form # CM-110) must be filed at least 15 calendar days prior to the Case Management Conference. The Case Management Statement may be filed jointly by all parties/attorneys of record or individually by each party/attorney of record. You must be familiar with the case and be fully prepared to participate effectively in the Case Management Conference.

At the Case Management Conference, the Court may make pretrial orders including the following, but not limited to, an order establishing a discovery schedule; an order referring the case to Alternative Dispute Resolution (ADR); an order reclassifying the case; an order setting subsequent conference and the trial date; or other orders to achieve the goals of the Trial Court Delay Reduction Act (Gov. Code, § 68600 et seq.)

Notice is hereby given that if you do not file the Case Management Statement or appear and effectively participate at the Case Management Conference, the Court may impose sanctions, pursuant to LASC Local Rule 3.37, Code of Civil Procedure sections 177.5, 575.2, 583.150, 583.360 and 583.410, Government Code section 68608, subdivision (b), and California Rules of Court, rule 2.2 et seq.

Dated: 10/21/2024

Judicial Officer

Timothy Patrick Dillon / Judge

---

**CERTIFICATE OF SERVICE**

I, the below named Executive Officer/Clerk of Court of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Notice of Case Management Conference upon each party or counsel named below:

☑ by depositing in the United States mail at the courthouse in Los Angeles _____, California, one copy of the original filed herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid.

☐ by personally giving the party notice upon filing of the complaint.

Leonard H. Sansanowicz
21031 Ventura Boulevard
Suite 701
Woodland Hills, CA 91364

David W. Slayton, Executive Officer / Clerk of Court

Dated: 10/21/2024

By D. Ortiz _____
Deputy Clerk

**NOTICE OF<br>CASE MANAGEMENT CONFERENCE**

Cal. Rules of Court, rules 3.720-3.730<br>LASC Local Rules, Chapter 7KUHH



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                    GAVIN NEWSOM, GOVERNOR

**Civil Rights Department**                                                            KEVIN KISH, DIRECTOR

651 Bannon Street, Suite 200 | Sacramento | CA | 95811
1-800-884-1684 (voice) | 1-800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

October 18, 2024

RE:    **Notice of Filing of Discrimination Complaint**
       CRD Matter Number: 202410-26723418
       Right to Sue: ████ A La Carte Productions, LLC et al.

To All Respondent(s):

Enclosed is a copy of a complaint of discrimination that has been filed with the Civil
Rights Department (CRD) in accordance with Government Code section 12960. This
constitutes service of the complaint pursuant to Government Code section 12962. The
complainant has requested an authorization to file a lawsuit. A copy of the Notice of
Case Closure and Right to Sue is enclosed for your records.

Please refer to the attached complaint for a list of all respondent(s) and their
contact information.

No response to CRD is requested or required.

Sincerely,

Civil Rights Department



# Superior Court of California, County of Los Angeles

---

## ALTERNATIVE DISPUTE RESOLUTION (ADR)
## INFORMATION PACKAGE

**THE PLAINTIFF MUST SERVE THIS ADR INFORMATION PACKAGE ON EACH PARTY WITH THE COMPLAINT.**

**CROSS-COMPLAINANTS** must serve this ADR Information Package on any new parties named to the action with the cross-complaint.

---

### What is ADR?

ADR helps people find solutions to their legal disputes without going to trial.  The main types of ADR are negotiation, mediation, arbitration, and settlement conferences.  When ADR is done by phone, videoconference or computer, it may be called Online Dispute Resolution (ODR).  These alternatives to litigation and trial are described below.

### Advantages of ADR
- **Saves Time:**  ADR is faster than going to trial.
- **Saves Money:**  Parties can save on court costs, attorney's fees, and witness fees.
- **Keeps Control** (with the parties):  Parties choose their ADR process and provider for voluntary ADR.
- **Reduces Stress/Protects Privacy:**  ADR is done outside the courtroom, in private offices, by phone or online.

### Disadvantages of ADR
- **Costs:**  If the parties do not resolve their dispute, they may have to pay for ADR, litigation, and trial.
- **No Public Trial:**  ADR does not provide a public trial or decision by a judge or jury.

### Main Types of ADR
1. **Negotiation:**  Parties often talk with each other in person, or by phone or online about resolving their case with a settlement agreement instead of a trial.  If the parties have lawyers, they will negotiate for their clients.

2. **Mediation:**  In mediation, a neutral mediator listens to each person's concerns, helps them evaluate the strengths and weaknesses of their case, and works with them to try to create a settlement agreement that is acceptable to all.  Mediators do not decide the outcome.  Parties may go to trial if they decide not to settle.

   **Mediation may be appropriate when the parties**
   - want to work out a solution but need help from a neutral person.
   - have communication problems or strong emotions that interfere with resolution.

   **Mediation may not be appropriate when the parties**
   - want a public trial and want a judge or jury to decide the outcome.
   - lack equal bargaining power or have a history of physical/emotional abuse.

## How to Arrange Mediation in Los Angeles County

Mediation for **civil cases** is voluntary and parties may select any mediator they wish.  Options include:

a.  **The Civil Mediation Vendor Resource List**
    If all parties in an active civil case agree to mediation, they may contact these organizations to request a "Resource List Mediation" for mediation at reduced cost or no cost (for selected cases).

- **ADR Services, Inc.** Assistant Case Manager Janet Solis, janet@adrservices.com (213) 683-1600
- **Mediation Center of Los Angeles** Program Manager info@mediationLA.org (833) 476-9145

   **These organizations cannot accept every case and they may decline cases at their discretion.**  They may offer online mediation by video conference for cases they accept.  Before contacting these organizations, review important information and FAQs at www.lacourt.org/ADR.Res.List

   **NOTE:  The Civil Mediation Vendor Resource List program does not accept family law, probate, or small claims cases.**

b.  **Los Angeles County Dispute Resolution Programs.**  Los Angeles County-funded agencies provide mediation services on the day of hearings in small claims, unlawful detainer (eviction), civil harassment, and limited civil (collections and non-collection) cases.
    https://dcba.lacounty.gov/countywidedrp/

   **Online Dispute Resolution (ODR).**  Parties in small claims and unlawful detainer (eviction) cases should carefully review the Notice and other information they may receive about (ODR) requirements for their case.  https://my.lacourt.org/odr/

c.  Mediators and ADR and Bar organizations that provide mediation may be found on the internet.

3.  **Arbitration:**  Arbitration is less formal than trial, but like trial, the parties present evidence and arguments to the person who decides the outcome.  In "binding" arbitration, the arbitrator's decision is final; there is no right to trial.  In "nonbinding" arbitration, any party can request a trial after the arbitrator's decision.  For more information about arbitration, visit https://www.courts.ca.gov/programs-adr.htm

4.  **Mandatory Settlement Conferences (MSC):**  MSCs are ordered by the Court and are often held close to the trial date or on the day of trial.  The parties and their attorneys meet with a judge or settlement officer who does not make a decision but who instead assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement.  For information about the Court's MSC programs for civil cases, visit https://www.lacourt.org/division/civil/CI0047.aspx

Los Angeles Superior Court ADR website:  https://www.lacourt.org/division/civil/CI0109.aspx
For general information and videos about ADR, visit http://www.courts.ca.gov/programs-adr.htm